UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20895-BLOOM/Elfenbein

ZANNEISHA MORRISON,

    Plaintiff,

v.

SYNOVUS BANK,

    Defendant.

_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Synovus Bank's ("Synovus") Motion to Dismiss Counts IV through IX of Plaintiff's Complaint, ECF No. [18]. Plaintiff Zanneisha Morrison ("Morrison") filed a Response in Opposition, ECF No. [21], to which Synovus filed a Reply, ECF No. [22]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Synovus's Motion is granted in part and denied in part.

**I.    BACKGROUND**

Morrison was employed by Synovus as a Vice President, Retail Market Manager from July 2023 to April 2024. ECF No. [1] ¶¶ 9, 26. On February 25, 2025, Morrison filed a lawsuit alleging that Synovus subjected her to race discrimination, retaliation, and a hostile work environment. *Id.* ¶ 11. Morrison asserts that, despite her exceptional job performance, Synovus engaged in a pattern of escalating hostility and discrimination against her. *Id.* ¶ 14. Morrison contends that this pattern

culminated in pretextual discipline and ultimate termination, all in retaliation for her protected complaints of race discrimination. *Id.*

Morrison alleges that Synovus maintained a racially hostile work environment, reinforced by use of racial tropes and microaggressions throughout the workplace. *Id.* ¶ 30. Morrison, a Black woman, noticed from the early days of her employment that Synovus's non-Black employees were treated more favorably. *Id.* ¶ 15. Morrison "was often told to watch her tone and was demeaned and referred to as a 'young lady' in a condescending manner," while her non-Black coworkers were addressed by proper professional titles. *Id.* ¶ 31. One of Morrison's non-Black coworkers received preferential treatment including the permission "to take [Morrison's] sales credits, directly undermining [her] ability to meet key performance metrics and earn bonuses." *Id.* ¶¶ 15-16. In September 2023, Morrison brought these disparities to the attention of four of her non-Black colleagues: her manager, the coworker receiving preferential treatment, the Senior Regional Sales Performance Partner, and the Executive Director of Consumer Banking. *Id.* ¶ 17. No corrective action was taken. *Id.*

In December 2023, Morrison filed a formal complaint with Synovus's Human Resources Department, citing racial discrimination by her manager and another co-worker. *Id.* ¶ 18. Morrison's complaint was originally assigned to a Black HR representative, but the representative was suddenly removed and replaced by a non-Black representative. *Id.* ¶ 19. Shortly thereafter, Morrison received notice that Synovus refused to speak with her witnesses and had stopped investigating her claims. *Id.* ¶ 20. Morrison alleges that Synovus failed to conduct a meaningful investigation and ultimately dismissed Morrison's complaint. *Id.* ¶ 21. Instead, Synovus subjected her to retaliatory discipline immediately following her complaints. *Id.* ¶ 22.

Synovus's disciplinary policy required progressive discipline beginning with verbal counseling, then written warnings, before issuing a "Final Warning." *Id.* ¶ 23. However, in February 2024, Synovus issued Morrison a "Final Warning" — the first disciplinary action she had ever received. *Id.* ¶ 22. Morrison was terminated on April 23, 2024. *Id.* ¶ 26. Despite documented evidence of Morrison's good job performance, Synovus stated that Morrison was terminated because she was not meeting her performance goals. *Id.*

Unlike her non-Black coworkers, Morrison was systematically denied resources, business opportunities, and institutional support. *Id.* ¶ 33. Synovus's pattern of discrimination and retaliation caused her significant financial losses, reputation damage, humiliation, embarrassment, and emotional distress. *Id.* ¶ 34. Synovus created a toxic and oppressive work environment, which caused Morrison stress, anxiety, paranoia, panic attacks, and difficulty sleeping. *Id.* ¶ 35.

On June 6, 2024, Morrison filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). ECF No. [18-2] at 2. On November 20, 2024, the EEOC electronically issued its Determination and Notice of Rights ("Notice") on its public portal and emailed Morrison to inform her the document was available to download. ECF No. [18-3] at 3-4. With "no determination" as to the violations alleged, the electronic Notice informed Morrison "of the dismissal of [her] charge and of [her] right to sue." ECF No. [18-2] at 2. The Notice stated that that if she chose to file a lawsuit under federal law in federal or state court, her "lawsuit must be filed WITHIN 90 DAYS of [her] receipt of this notice." *Id.*

Ninety-seven (97) days later, on February 25, 2025, Morrison filed the present action, asserting claims of Disparate Treatment under 42 U.S.C. § 1981 (Count I), Hostile Work Environment under 42 U.S.C. § 1981 (Count II), Retaliation under 42 U.S.C. § 1981 (Count III), Disparate Treatment under Title VII (Count IV), Retaliation under Title VII (Count V), Hostile

Work Environment under Title VII (Count VI), Disparate Treatment under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 *et seq*, (Count VII), Retaliation under the FCRA (Count VIII), and Hostile Work Environment under the FCRA (Count IX). ECF No. [1].

Synovus's Motion seeks dismissal of Counts IV through IX of Morrison's Complaint and argues that the Title VII and FCRA claims are time-barred as Morrison failed to file her Complaint within 90 days of receipt of the EEOC Notice. ECF No. [18] at 6. Morrison responds that the lateness in filing her Complaint is excusable under the doctrine of equitable tolling, she demonstrated diligence in asserting her rights, and there is no prejudice to Synovus. ECF No. [21] at 7. Morrison maintains that equitable tolling is justified because, due to technical difficulties, she did not access the EEOC's Notice until November 28 or 29, 2024. *Id.* at 4. She believed the 90-day period began only when she accessed the document, giving her until February 26 or 27, 2025, to file suit. *Id.* She argues that she was unrepresented by counsel at the time and has otherwise diligently pursued her rights, warranting equitable tolling in this case. *Id.* at 7. Synovus replies that Morrison is not entitled to equitable tolling, which only applies in extraordinary circumstances. ECF No. [22] at 3.

**II.     LEGAL STANDARD**

When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

III.     DISCUSSION

　　A. Title VII Claims

To bring a Title VII claim, a plaintiff must file within 90 days of receipt of a Notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see also Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 151 (1984). If a defendant contests the timeliness of the complaint, the plaintiff bears the burden of establishing she met the 90-day requirement. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002) (citing *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).

There is no dispute that Morrison's filing was untimely. ECF No. [18] at 6 (Morrison "did not file her Complaint until February 25, 2025, ninety-seven (97) days after actual receipt of her Notice of Right to Sue and ninety-four (94) days after presumed receipt of her Notice of Right to Sue"); ECF No. [21] at 3 (stating Morrison filed her Complaint "on the 97th day, only four days after the presumed deadline from receipt of the EEOC's Notice of Right to Sue.") Synovus argues that Morrison's untimeliness is an absolute bar to her claim. ECF No. [18] at 6. Specifically, it points out that she "failed to allege when she received her Notice" and "failed to establish any delay in receipt was caused by events beyond her control." *Id.* Morrison responds that her untimeliness should be excused under the doctrine of equitable tolling. ECF No. [21] at 3.

The 90-day deadline imposed by an EEOC notice is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). To justify an application of equitable tolling, a plaintiff must establish two elements: (1) diligent pursuit of her rights, and (2) "some extraordinary circumstance [that] stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255-56 (2016) (internal citations omitted). As the United States Supreme Court and the Eleventh Circuit have recognized, "tolling is an

6

extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). The Eleventh Circuit has tolled the Title VII limitations period in three situations: "if (1) a state court action is pending; (2) the defendant concealed acts giving rise to a Title VII claim; or (3) the defendant [or the EEOC] misled the employee about the nature of [her] rights under Title VII." *Mesidor v. Waste Mgmt., Inc. of Fla.*, 606 F. App'x 934, 936 (11th Cir. 2015) (internal citations omitted); *Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008) (internal citations omitted). "Where there has been no showing of a basis for equitable tolling in either the complaint or a response to a motion to dismiss, courts have granted motions to dismiss claims as time-barred." *Switala v. Rosenstiel*, 288 F. Supp. 3d 1296, 1301 (S.D. Fla. 2017) (internal citations omitted).

Although Morrison does not argue that her case falls into any of the situations that justify tolling the Title VII limitations period, she nonetheless argues that equitable tolling is appropriate. ECF No. [21] at 3. At the time the EEOC issued its Notice, Morrison was unrepresented by counsel and did not understand the full legal significance of the document. *Id.* Morrison asserts that she repeatedly attempted to download the EEOC Notice from the online portal, but she was not successful until November 28 or 29, 2024. ECF No. [21-1] ¶ 5-6. Based on the date she successfully accessed the Notice, she believed her 90-day deadline was February 26 or 27, 2025. *Id.* ¶ 7. Morrison also points to the fact that Synovus suffers no prejudice from allowing her claims to proceed. ECF No. [21] at 5. Morrison claims that she, however, would be unjustly prejudiced by the dismissal of her claims because of the unique remedies available under Title VII. *Id.* at 6.

Synovus replies that equitable tolling is unwarranted. ECF No. [22] at 3. It asserts that prejudice to a plaintiff is an insufficient basis to invoke equitable tolling. *Id.* at 4 (citing *Baldwin Cnty. Welcome Center*, 466 U.S. at 152; *Hogan v. Secretary, U.S. Dep't of Veterans Affairs*, 121

F.4th 172, 178-79 (11th Cir. 2024)). It contends that Morrison's repeated attempts to download her Notice do not constitute the requisite due diligence, nor do technical difficulties, and a lack of representation does not constitute extraordinary circumstances justifying equitable tolling. *Id.* at 3.

### i. Diligence

In considering whether equitable tolling is appropriate, courts have imposed "some minimum responsibility" on the plaintiff for the timely resolution of her claims. *Zillyette*, 179 F.3d at 1340 (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242 (11th Cir. 1982)). The plaintiff must establish her due diligence in pursuing her claims. *Chang v. Carnival Corp.*, 839 F.3d 993, 996 (11th Cir. 2016) ("To be in a position to advance a tolling argument, due diligence is a necessary, though not sufficient, prerequisite that a plaintiff must satisfy.")

Morrison claims to have had difficulty accessing the Notice on November 20, 2024. ECF No. [21] at 4. Regardless of any failure to access the Notice, the record reflects that Morrison was sent an email on November 20, 2024 stating that a document was available for download on the EEOC public portal. ECF No. [18-3] at 3. The Eleventh Circuit has recognized that the 90-day filing deadline is imposed at the time the plaintiff has "adequate notice that the EEOC has dismissed the Charge." *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). Therefore, when a plaintiff receives an email from the EEOC that her Notice is available on the online public portal, the plaintiff has "adequate notice" and must begin diligently pursuing her claims. *Laliberte v. DG Distrib. Se., LLC*, No. 24-cv-22, 2024 WL 4933323, at *4 (M.D. Ga. Dec. 2, 2024) (holding that even if the notice itself was inaccessible due to technical difficulties, the EEOC email alone could trigger the 90-day deadline).

8

Even where a plaintiff states she was unable to download an EEOC Notice on the date the Notice was issued, courts have found that an email to the plaintiff, notifying her that a document was available on the EEOC portal, placed the plaintiff on notice and started the 90-day clock. *See Johnson v. Healthy Reasons Inc.*, No. 22-cv-03068, 2024 WL 3914836, at *6-*7 (N.D. Ga. Feb. 15, 2024) (collecting cases) *report and recommendation adopted*, No. 22-cv-03068, 2024 WL 3914833 (June 17, 2024). The *Laliberte* Court found that the plaintiff "had adequate notice of the Right to Sue Letter" on the day it was issued because the plaintiff's attorney requested a Right to Sue Letter, was told that a Right to Sue Letter was forthcoming, and, on the day the Letter was issued, the attorney was notified that "an important document' had been uploaded to the EEOC portal." 2024 WL 4933323, at *4. As in *Laliberte*, the Court in *Healthy Reasons also* concluded that a delay in accessing the actual Notice did not toll the 90-day deadline because the plaintiff had adequate notice of the EEOC's dismissal of his Charge. *Healthy Reasons*, 2024 WL 3914836, at *7. Although the plaintiff claimed that he did not download Right to Sue Letter on the date it was uploaded to the EEOC portal, he "not only received notice via email from the EEOC, but records revealed that the notice of right-to-sue was downloaded multiple times by Plaintiff and/or his attorney" on the day he received the email. *Id.* The circumstances in this case are similar: Morrison was emailed on November 20, 2024 that a document was available for download on the EEOC public portal and the record reflects that the Notice was downloaded several times on that day. ECF No. [18-3] at 3. Therefore, she was responsible for diligently pursuing her claims from that day forward. *Laliberte*, 2024 WL 4933323, at *4.

Although Morrison claims she was unsuccessful in accessing the Notice on November 20, 2024, she failed to contact the EEOC to inform them that she was unable to access the Notice. *See* ECF No. [21]. As in *Kerr v. McDonald's Corp.*, Morrison's failure to inquire about a late or missing

Notice from the EEOC constitutes a "[failure] to assume the minimal responsibility or to put forth the minimal effort necessary to resolve [her] claims." *Kerr v. McDonald's Corp.,* 427 F.3d 947, 953 (11th Cir. 2005). Morrison instead waited until November 28 or 29, 2024, to try accessing the document again, at which point she was successful. ECF No. [21] at 4. Even if her failure to access the document before November 28, 2024, constitutes "neglect[,] . . . equitable tolling does not apply to this form of ordinary negligence." *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 847 (11th Cir. 2013) (citing *Irwin*, 498 U.S. at 96).

In cases in which plaintiffs have stated they misunderstood the applicable deadline, courts have nonetheless faulted plaintiffs for "fail[ing] to complete [their] complaint earlier in the 90-day period, so that [they] would have sufficient time to investigate the rule for timely filing." *Joye v. Sec'y Dep't of Navy,* 736 F. App'x 861, 864 (11th Cir. 2018) (holding *pro se* plaintiff was not diligent in pursuing claims where Clerk of Court misinformed plaintiff that complaint would be timely if postmarked on day of deadline). Although Morrison states that she "had trouble accessing the document" when it was available on November 20, 2024, she was ultimately able to download it "on either November 28, 2024 or November 29, 2024." ECF No. [21] at 3-4. Therefore, "had Plaintiff not waited until the ninth hour to file this case - or her belief as to '90 days' - it may have been timely." *Penson-Johnson v. U.F. Health Shands Hosp.*, No. 24-cv-176, 2025 WL 1524493, at *6 (N.D. Fla. Feb. 27, 2025) *report and recommendation approved*, No. 24-cv-176, 2025 WL 1517807 (May 28, 2025); *see also Brinkman v. Nasseff Mech. Contractors Inc.*, 251 F. Supp. 3d 1266, 1274-75 (D. Minn. 2017) (collecting cases). This delay in filing her Complaint provides further evidence that Morrison was not diligent in pursuing her claims.

**ii. Extraordinary Circumstances**

Even if Morrison diligently pursued her claims, she falls short of her burden on the second element required for equitable tolling: "some extraordinary circumstance [that] stood in [her] way and prevented timely filing." *Menominee*, 577 U.S. at 255. This extraordinary circumstance must be "both beyond [the plaintiff's] control and unavoidable even with diligence." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)).

Lack of counsel or ignorance of the law does not establish extraordinary circumstances compelling equitable tolling. *Wakefield v. R.R. Retirement Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) (citing *Gatewood v. R.R. Retirement Bd.*, 88 F.3d 886, 890 (10th Cir. 1996)) (holding equitable tolling based on plaintiff's *pro se* status unwarranted). Morrison argues courts have equitably tolled deadlines "where delay was caused by miscalculation, lack of counsel, or confusion over notice delivery." ECF No. [21] at 3 (citing *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988)). But in *Machules*, the Court's holding was predicated on the petitioner having been "misled or lulled into inaction by his Employer" and the petitioner's error in filing a timely claim in the wrong forum. *Machules*, 523 So. 2d at 1134. No such circumstances are alleged here. ECF No. [1].

And at some point between receiving her Notice from the EEOC and filing her Complaint, Morrison retained counsel. ECF No. [21] at 4. Even if Morrison was unsure of deadline for filing her Complaint, any misunderstanding or miscalculation by her counsel regarding the deadline to file cannot justify equitable tolling. *Hutchinson v. Florida,* 677 F.3d 1097, 1100 (11th Cir. 2012) ("The Supreme Court has also instructed us that 'a garden variety claim of . . . neglect such as a

simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling.'" (quoting *Holland v. Florida*, 560 U.S. 631, 651 (2010))).

Morrison's contention that allowing her claims to continue would not prejudice Synovus has no bearing on the Court's equitable tolling analysis. *Raziano v. United States*, 999 F.2d 1539, 1542 (11th Cir. 1993) (holding that lack of prejudice to the defendant cannot alone justify equitable tolling (citing *Baldwin Cnty. Welcome Center*, 466 U.S. at 152)). Morrison's claim that she would be prejudiced by the dismissal is insufficient given her failure to meet her burden on the only two elements required to invoke equitable tolling: diligent pursuit of her claims and extraordinary circumstances. *Scott v. Piedmont Columbus Reg'l Hosp.*, 806 F. App'x 954, 956 (11th Cir. 2020).

Because Morrison's Complaint was filed untimely and she has not established the elements of equitable tolling, her Title VII claims must be dismissed. *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (dismissing suit where plaintiff failed to file within 90 days of receipt of Notice from the EEOC and equitable tolling was unjustified).

### B. FCRA Claims

Synovus asserts that the 90-day deadline applies to claims filed under the FCRA but fails to cite to the statute governing such claims. *See* ECF No. [18] at 3 (citing *Fulford v. Miami-Dade County*, 219 F. Supp. 3d 1248, 1251 n.4 (S.D. Fla. 2016)). Synovus's contention that the Title VII deadline applies to FCRA claims relies on cases holding that case law interpreting Title VII is also applicable to claims brought under the FCRA. *See Wallace v. Pub. Health Trust of Dade Cnty.*, 370 F. Supp. 2d 1247, 1250 n.2 (S.D. Fla. 2005). However, in determining the limitations period set by the FCRA, this Court begins with the text of the governing statute. *Watts v. Joggers Run Property Owners Ass'n, Inc.*, 133 F.4th 1032, 1040 (11th Cir. 2025); *United States v. DBB, Inc.*, 180 F.3d

12

1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself." (citing *Watt v. Alaska*, 451 U.S. 259, 265 (1981))).

To recover under the FCRA, the plaintiff must "file a complaint with the [Florida Commission on Human Rights ("FCHR") or EEOC] within 365 days of the alleged violation." Fla. Stat. § 760.11(1). "Within 180 days of the filing of the complaint", the agency with which the complaint was filed "shall determine if there is reasonable cause to believe that discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992." *Id.* § 760.11(3). If the agency determines reasonable cause exists, the plaintiff may file suit "no later than 1 year after the date of determination" or may request an administrative hearing. *Id.* § 760.11(5). If the agency determines no cause exists, the plaintiff may request an administrative hearing "within 35 days of the date of determination." *Id.* § 760.11(7). If the agency fails to make a reasonable cause determination within 180 days, the FCRA provides that the plaintiff "may proceed . . . as if the commission determined there was reasonable cause." *Id.* § 760.11(8)(a).

This Court defers to the Florida Supreme Court to interpret the language of the FCRA. *United States v. Hill*, 799 F.3d 1318, 1322 (11th Cir. 2015) ("[F]ederal courts are bound by a state supreme court's interpretation of state law . . . ." (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010))). The Florida Supreme Court has determined that the FCRA requires specific language to constitute a reasonable cause determination. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 897 (Fla. 2002) (holding that Fla. Stat. § 760.11(7) requires a "specific determination '*that there is not reasonable cause*' to believe a violation occurred" (emphasis in original)). In *Woodham*, the Court therefore determined that an EEOC Notice fails to constitute a reasonable cause determination if it is "unable to conclude" a violation has occurred and does not refer to the options available under the FCRA. *Id.* ("We cannot and will not equate 'unable to

13

conclude' with a determination that 'there is not reasonable cause.' . . . In addition, . . . [T]he notice requirement in [Fla. Stat. § 760.11(3)] . . . requires [the agency] to 'promptly notify the aggrieved person . . . of the options available under this section.'" (internal citations omitted)).

"Without having received a proper 'no cause' determination, . . . Woodham was permitted to proceed under [Fla. Stat. § 760.11(4)] 'as if the FCHR made a "reasonable cause" determination,' because the [the agency] failed to make a determination either way regarding whether reasonable cause existed." *Id.* Under § 760.11(4)-(5), a plaintiff may bring a civil suit "no later than 1 year after the date of determination" if she receives within 180 days only a Notice from the EEOC that does not constitute a reasonable cause determination Fla. Stat. § 760.11(4)-(5). As such, the one-year statute of limitations applies when a plaintiff receives a Notice from the EEOC that does not constitute a reasonable cause determination. *Woodham*, 829 So. 2d at 897.[1]

The Notice Morrison received stated that it "makes no determination about whether further investigations would establish violations of the statute." ECF No. [18-2] at 2. The Notice also failed to specifically determine whether or not there is reasonable cause. ECF No. [18-2] at 2. Additionally, the Notice limits the 90-day deadline to lawsuits filed "under federal law in federal or state court" and explicitly disclaims: "The time limit for filing a lawsuit based on a claim under state law may be different." ECF No. [18-2] at 2. The Notice lacks any reference to a state discrimination claim or any relief available under state law. *Id.* The Notice therefore does not constitute a determination as to whether reasonable cause exists. *See Woodham*, 829 So. 2d at 897. Because the Notice did not make a determination as to whether reasonable cause exists within 180

---

[1] To the extent that Synovus cites any conflicting federal district court opinions, this Court defers to the plain text of the statute and the Florida Supreme Court. *Hill*, 799 F.3d at 1322 (citing *Johnson v. United States*, 559 U.S. at 138).

14

days, Morrison had one year from receipt of the Notice to file suit. *Id.* Therefore, Morrison's FCRA claims were timely filed.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Synovus's Motion to Dismiss, **ECF No. [18]**, is **GRANTED IN PART** and **DENIED IN PART**.

2. Counts IV, V, and VI of the Complaint, **ECF No. [1],** are **DISMISSED WITH PREJUDICE.**

3. Synovus shall file an Amended Answer to Morrison's Complaint on or before **August 14, 2025.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 1, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record